# GENERAL TERMS ENGINE LEASE AGREEMENT

## BETWEEN

## AAR AIRCRAFT & ENGINE SALES & LEASING, INC.

## AND

## EVERGREEN INTERNATIONAL AIRLINES, INC.

2/111401/fb

# TABLE OF CONTENTS

| Section | Title | Page |
|---|---|---|
| 1 | Term of this GTA | 1 |
| 2 | Individual Engine Leases; Term | 1 |
| 3 | Delivery, Inspection, Acceptance and Installation | 2 |
| 4 | Charges and Payment | 2 |
| 5 | Compliance with Laws; Lessee's Representations and Warranties | 3 |
| 6 | Use and Maintenance | 4 |
| 7 | Records | 4 |
| 8 | Modifications | 5 |
| 9 | Total Loss | 5 |
| 10 | No Abatement or Set Off | 5 |
| 11 | Release and Indemnity | 5 |
| 12 | Limited Warranty; Disclaimer | 6 |
| 13 | Force Majeure | 6 |
| 14 | Insurance | 6 |
| 15 | Title to Equipment | 7 |
| 16 | Taxes | 8 |
| 17 | Subleases; Assignment | 8 |
| 18 | Return of Equipment | 8 |
| 19 | Termination and Additional Assurances | 10 |
| 20 | Repossession of Equipment | 10 |
| 21 | Notices | 11 |
| 22 | Recording | 11 |
| 23 | Brokers/Finders | 11 |
| 24 | Applicable Law | 11 |
| 25 | Jurisdiction and Venue | 11 |
| 26 | Confidentiality | 11 |
| 27 | Financial Information | 12 |
| 28 | Miscellaneous | 12 |
| Exhibit A | Aircraft Engine Lease Agreement | |
| Exhibit B | Engine Delivery Receipt | |
| Exhibit C | Non-Incident Statement | |

# GENERAL TERMS ENGINE LEASE AGREEMENT

## BETWEEN

## AAR AIRCRAFT & ENGINE SALES & LEASING, INC.

## AND

## EVERGREEN INTERNATIONAL AIRLINES, INC.

### CONTRACT NUMBER 25454

This General Terms Engine Lease Agreement ("GTA") is made and entered into as of this 14th day of November, 2001, by and between AAR Aircraft & Engine Sales & Leasing, Inc. ("Lessor") with offices at One AAR Place; 1100 N. Wood Dale Road; Wood Dale, Illinois  60191 and Evergreen International Airlines, Inc. ("Lessee") with offices at 3850 Three Mile Lane; McMinnville, OR 97128-9496.

In consideration of the premises and mutual promises herein contained, Lessor and Lessee hereby agree as follows:

1.   TERM OF THIS GTA

The term of this GTA will commence on the date of the GTA and will continue thereafter for three (3) years.

2.   INDIVIDUAL ENGINE LEASES; TERM

    a.   Lessor will lease aircraft engines to Lessee from time to time to the extent such engines are desired by Lessee and are available from Lessor, all upon the terms and conditions hereof.  Such individual engine leases will be initiated by Lessee submitting to Lessor an executed Aircraft Engine Lease Agreement ("Lease") in the form of Exhibit A.  Each Lease will be for a single engine described by serial number in the Lease and all parts and attachments thereto (the "Engine"), all Engine records in the possession of Lessor which are requested by Lessee, Engine records generated by Lessee during the Lease Term, and one Engine stand described by serial number in the Lease, collectively referred to as the "Equipment."

    b.   The term of each Lease will be for the period specified in such Lease ("Lease Term").  Any Lease which, by its own terms, extends beyond the term of the GTA, will continue in effect in accordance with the terms and conditions of the GTA until said Lease expires.  Notwithstanding the expiration of a Lease Term, all of the obligations of Lessee under the Lease shall continue until such time as the Equipment is returned to Lessor in accordance with the terms of the Lease.

    c.   Lessee will forthwith redeliver the Equipment to Lessor upon the expiration or earlier termination of the Lease pertaining to such Equipment.

3.  DELIVERY, INSPECTION, ACCEPTANCE AND INSTALLATION

   a.   Lessor will deliver the Equipment to Lessee on the Delivery Date at the Delivery Location specified in the applicable Lease (the "Delivery"). At time of Delivery, the Engine will have a Federal Aviation Administration ("FAA") approved return to service maintenance release tag affixed to it. Lessor will also provide to Lessee all records required for operation of the Engine, including, if available, an "Engine Condition Checklist" which will detail the last Engine inspection at a repair facility.  At Delivery, risk of loss, damage to or destruction of the Equipment shall transfer from Lessor to Lessee and, except as otherwise provided herein, such risk shall remain with Lessee until the Equipment has been redelivered by Lessee to Lessor in accordance with the terms of this GTA.

   b.   Lessee will deliver to Lessor a receipt for the Engine substantially in the form of Exhibit B, duly executed by an authorized representative of Lessee upon delivery of such Engine.

   c.   Delivery by Lessor is subject to the following conditions precedent:

      i.   Receipt by Lessor of the Initial Payment required by Section 4.b. below; and

      ii.   Receipt by Lessor of the insurance certificates required by Section 14 below.

   d.   Lessee may conduct a visual (including borescope) inspection of the Engine within the Inspection Period stated in the Lease to determine whether the Engine is acceptable to Lessee.  If Lessee installs or operates the Engine or does not notify Lessor before the end of such period that the Engine is not acceptable to Lessee, it will be conclusively deemed that Lessee has accepted the Engine.  Any Engine rejection shall be by notice to Lessor detailing the reason for rejection.  In the event of such rejection, Lessee will hold the Equipment pending shipping instructions from Lessor, at which time Lessee will ship the Equipment to Lessor's designated location at Lessor's sole expense.  Upon receipt of the Equipment by Lessor, following a rejection by Lessee, the Lease with respect to such Equipment will terminate, all funds previously received by Lessor from Lessee pursuant to such Lease will be returned to Lessee, and neither party will have any further liability to the other under such Lease.

   e.   Within forty eight (48) hours after installation of an Engine on an aircraft, Lessee will notify Lessor of the type and serial number of such aircraft.

   f.   Lessee represents and warrants to Lessor that each lessor, lender, or any other party having an interest in any aircraft upon which an Engine is or may be installed under any lease has authorized such installation and has acknowledged to Lessee that such lessor, lender, or other party will acquire no right, title, or interest in and to such Engine by reason of such installation.

4.  CHARGES AND PAYMENT

   a.   Lessee will pay to Lessor:

      i.   the one-time Transaction Fee specified in each Lease; and

      ii.   the Daily Rent specified in each Lease for each day or fraction thereof during the term of each such Lease, commencing with the Delivery Date specified in the Lease and continuing until the return of the Equipment in accordance with the terms of this GTA and the Lease; and

      iii.   the Use Fee specified in each Lease for each hour of Engine operation or fraction thereof, or each cycle of operation (or cycle of accumulation in the case of JT8D-200 series engines), whichever is greater; and



iv.    the Security Deposit specified in each Lease. The Security Deposit is a one-time payment for the purpose of securing Lessee's obligations under the Lease. The Security Deposit will be refunded by Lessor to Lessee upon the return of the Equipment to Lessor at the expiration of the Lease, provided that an event of default has not occurred and is continuing. The Security Deposit is not to be used by Lessee in lieu of any payment obligations under the Lease; except, however, Lessee may apply the Security Deposit against Lessee's Use Fee payment obligations for the last month of the Lease Term, provided that no Lessee default has occurred and is continuing under the Lease.

b.    Prior to Delivery of the Equipment, Lessee will pay Lessor an initial payment ("Initial Payment") consisting of the Transaction Fee and the Security Deposit and the Daily Rent for the entire Lease Term or the first thirty (30) day period of the Lease, whichever is less. If the term of a Lease exceeds thirty (30) days, Lessee shall pay Daily Rent to Lessor monthly in advance for either the remainder of the term of such Lease or the succeeding thirty (30) day period, whichever is less. Lessee shall pay Use Fees to Lessor within ten (10) days after each calendar month of the Lease based on actual Engine operation during such preceding calendar month. Notwithstanding the preceding sentence, Lessee shall pay Use Fees to Lessor, for the month in which redelivery occurs, within ten (10) days after redelivery of the Engine to Lessor.

c.    All payments will be made by bank transfer of immediately available funds in U.S. Dollars to the

d.    Within ten (10) days after a request by either party, but not more frequently than once every thirty (30) days during any Lease, and within thirty (30) days after redelivery of the Equipment to Lessor, the parties will reconcile all charges under such Lease. Lessee will then promptly pay Lessor any payment deficiency and, provided Lessee is not in default hereunder, Lessor will then pay Lessee any payment excess.

e.    Lessee shall pay to Lessor, upon demand, to the extent permitted by applicable law, interest on any installment of Rent (Daily Rent, Use Fees or other) not paid when due under any Lease hereunder, for any period for which any of the same is overdue (without regard to any grace period) at a rate equal to Prime plus five percent (5%).

5.   <u>COMPLIANCE WITH LAWS; LESSEE'S REPRESENTATIONS AND WARRANTIES</u>

Lessee hereby represents and warrants that:

a.    The Equipment will be used and operated solely in compliance with all statutes, laws, ordinances, rules and regulations of any Federal, state or local governmental body, agency, or authority of the United States or any foreign governmental body, agency, or authority applicable to the use and operation of the Equipment;

b.    Lessee shall procure and maintain in effect all licenses, registrations, certificates, permits, approvals and consents required by any laws or by any governmental body, agency or authority in connection with the ownership, delivery, installation, use and operation of the Equipment;

c.    The Equipment will at all times be and remain in the possession and control of Lessee except as specifically provided in Section 17;

d.    The leasing of the Equipment from Lessor by Lessee, the execution and delivery of each Lease and the compliance by the Lessee with the terms thereof, and the payments and performance by Lessee of all of its obligations thereunder will not violate or constitute a breach of any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Lessee is a party;

3



e.    Neither the execution and delivery of any Lease by Lessee, nor the payment and performance by Lessee of all of its obligations hereunder and thereunder, requires the consent or approval of, the giving of notice to, or the registration, filing or recording with, or the taking of any other action in respect of, any Federal, state, local or foreign government or governmental authority or agency or any other person; and

f.    No action, including any filing or recording of any document, is necessary or advisable in order to establish and perfect Lessor's or any assignee's title to and interest in the Equipment as against any third parties in any applicable jurisdiction.

6.    <u>USE AND MAINTENANCE</u>

a.    Lessee will use each Engine only on commercial transport aircraft owned or operated by Lessee (or by an approved sublessee) in a safe manner, and in accordance with the manufacturer's recommended operating procedures and manuals and instructions in effect from time to time and only in those countries for which the insurance required under Section 14 herein is effective.

b.    During a Lease Term, Lessee will repair and maintain the Engine in accordance with applicable requirements of all governmental agencies, the requirements and recommendations of the manufacturers of the Engine, and any special instructions of the Lessor, provided that any such special instructions will not cause Lessee to bear any additional expense for any Engine leased hereunder.



If, during a Lease Term, an Engine becomes unserviceable due to Normal Wear and Tear, (i) Lessee shall immediately notify Lessor of the unserviceable condition, and (ii) unless otherwise agreed by Lessor and Lessee, Lessee shall promptly return the Engine to Lessor in accordance with Section 18 and other provisions herein.

c.    Any replacement parts furnished by Lessee (in consideration of Lessee's above-stated Engine repair obligations) will be free and clear of liens and of equal or better value and modification status than the part replaced, assuming the part replaced was in the condition required by this GTA. All such replacement parts must have been last serviced by an FAA-approved repair facility, and such parts will become the property of Lessor immediately upon installation on an Engine. All replaced parts will become the property of Lessee immediately upon replacement.

d.    If any government rule, order, regulation or authority requires that a modification or repair be made to an Engine during its Lease Term ("Mandatory Change"):

i.    Lessee will not be obligated to perform such Mandatory Change;

ii.   Lessee will be permitted to return the Engine to Lessor prior to the expiration of the Lease Term but no earlier than the due date for such Mandatory Change; and

iii.  The Engine shall be returned to Lessor in accordance with Section 18 and other provisions herein; except that the Engine need not have a serviceable tag affixed if the Engine is

4



unserviceable solely as a result of the Mandatory Change not yet having been performed or due to Normal Wear and Tear.

7.    RECORDS

a.    Lessee will maintain complete and accurate records in English for all Equipment and will provide them to Lessor on request. All such records will be deemed Equipment at the time generated. Within two (2) business days after each calendar month of the Lease, Lessee will report to Lessor the hours and cycles of operation and the registration number of the aircraft on which the Equipment is installed. Upon redelivery of the Engine to Lessor, Lessee will report to Lessor the usage during the then-current calendar month, as well as the total hours and cycles operated during the Lease Term.

b.    Upon redelivery of the Equipment to Lessor, Lessee will return all Engine records delivered to Lessee by Lessor, together with all Engine records generated by Lessee.

c.    With respect to any part installed by the Lessee during a Lease and not removed prior to the return of an Engine, the records returned to Lessor will include:

i.    Part number, description, and serial number (if part is serialized); and

ii.    Historical records, including but not limited to (a) serviceability status of the part at installation; (b) for a time-controlled part, total time and cycles, time and cycles since overhaul as may be applicable, and total time and cycles of the Engine at the time of part installation; and (c) for a life-limited part, documentation tracing usage of the part since new.

8.    MODIFICATIONS

Lessee will not make any modifications or alterations to any Equipment without Lessor's prior written consent.

9.    TOTAL LOSS

In the event of actual or constructive total loss or destruction of any Engine or damage thereto beyond economic repair during the term of a Lease, or the loss of possession of any Engine for more than thirty (30) days by reason of seizure, requisition, theft, disappearance, or otherwise, Lessee will immediately notify Lessor thereof. In the event of such loss, damage (provided that Lessee is responsible for such damage in accordance with Section 6.b. herein), or loss of possession, or if Lessee fails to redeliver the Equipment in accordance with the terms hereof, Lessee will pay Lessor upon demand the Agreed Value of such Engine as specified in the Lease, together with all other payments owing hereunder through the date of such payment of the Agreed Value; and the Lease will terminate upon payment of all such amount; and, upon payment of such amount, title to the Engine will be transferred to Lessee, subject to the rights of affected insurance companies.

10.    NO ABATEMENT OR SET OFF

Unless otherwise expressly provided herein, Lessee will not be entitled to any abatement, reduction of or set off against rents or other payments due Lessor under any circumstances or for any reason whatsoever.

11.    RELEASE AND INDEMNITY

a.    LESSEE HEREBY RELEASES AND AGREES TO INDEMNIFY, DEFEND, AND HOLD LESSOR, ITS INDEMNITEE(S), AND THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS (COLLECTIVELY, "INDEMNIFIED PARTIES") HARMLESS FROM AND AGAINST ANY AND ALL LIABILITIES, CLAIMS, DEMANDS, SUITS, DAMAGES, AND LOSSES (INCLUDING WITHOUT LIMITATION ALL REASONABLE ATTORNEYS' FEES, COSTS, AND EXPENSES IN CONNECTION THEREWITH OR INCIDENT THERETO), FOR DEATHS OF OR INJURIES TO

5



ANY PERSONS WHOMSOEVER (INCLUDING WITHOUT LIMITATION INDEMNIFIED PARTIES' EMPLOYEES), AND FOR LOSS OF OR DAMAGE TO OR DELAY IN THE DELIVERY OF ANY PROPERTY WHATSOEVER, INCLUDING WITHOUT LIMITATION ANY AIRCRAFT ON WHICH ANY ENGINE MAY BE INSTALLED AND LOSS OF USE THEREOF, (COLLECTIVELY, "LOSSES") IN ANY MANNER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THE DELIVERY, LEASING, STORAGE, TRANSPORTING, INSTALLATION, OPERATION, MAINTENANCE, USE, DETACHMENT OR REDELIVERY OF ANY ENGINE WHILE UNDER LEASE, REGARDLESS OF NEGLIGENCE, ACTIVE, PASSIVE, OR ANY OTHER TYPE, OF INDEMNIFIED PARTIES; EXCEPT THAT THE FOREGOING INDEMNITY SHALL NOT APPLY TO THE EXTENT THAT ANY SUCH LOSSES ARE CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF INDEMNIFIED PARTIES.

b.  IN NO EVENT WILL LESSOR BE LIABLE FOR ANY REASON FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, SUCH AS LOST REVENUES, LOST PROFITS, OR LOSS OF PROSPECTIVE ECONOMIC ADVANTAGE, RESULTING FROM PERFORMANCE OR FAILURE TO PERFORM UNDER THIS AGREEMENT.

12.   LIMITED WARRANTY; DISCLAIMER

a.  Lessor warrants that either (i) it will have good title to the Equipment at the time of delivery to Lessee, or (ii) if Lessor is not the owner of the Equipment, Lessor has been authorized by the owner of the Equipment (the "Owner") to lease the Equipment to Lessee and to perform as Lessor hereunder.

b.  The Equipment is leased and accepted by Lessee in "AS IS" condition and with all faults.  Lessor makes no warranties whatsoever with respect to any Equipment, express or implied, except the warranty appearing in Section 12.a. above.

c.  THE WARRANTIES SET FORTH IN THIS SECTION 12 AND THE OBLIGATIONS AND LIABILITIES OF LESSOR THEREUNDER, ARE EXPRESSLY IN LIEU OF AND LESSEE HEREBY WAIVES AND RELEASES LESSOR FROM ANY AND ALL OTHER WARRANTIES, AGREEMENTS, GUARANTEES, CONDITIONS, DUTIES, OBLIGATIONS, REMEDIES OR LIABILITIES, EXPRESS OR IMPLIED, ARISING BY LAW OR OTHERWISE, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY AND FITNESS FOR INTENDED USE, WITH RESPECT TO ANY EQUIPMENT LEASED HEREUNDER OR LESSOR'S PERFORMANCE HEREUNDER.    NO AGREEMENT OR UNDERSTANDING VARYING, ALTERING, OR EXTENDING LESSOR'S LIABILITY WILL BE BINDING ON LESSOR UNLESS IN WRITING AND SIGNED BY LESSEE'S AND LESSOR'S DULY AUTHORIZED OFFICER OR REPRESENTATIVE.

d.  Upon Lessee's request and provided that Lessee is not in default under this GTA or any Leases hereunder, Lessor will reasonably assist Lessee in processing claims and enforcing rights of Lessor arising under any existing manufacturer's or overhaul agency warranties for any Engine leased hereunder; provided always that Lessee will indemnify Lessor for any reasonable costs and expenses incurred by Lessor in connection therewith.  With respect to any such warranties, it is understood that, except as specifically provided in this Section 12.d., Lessor will have no further liabilities to Lessee.

13.   FORCE MAJEURE

Lessor will not be liable for failure to perform or any delays in performance hereunder due to acts of God, the public enemy, war or warlike operations, failure of suppliers to timely deliver or other inability to secure parts or material, insurrection or riots, floods, explosions, fires, earthquakes, any governmental act, failure of transportation, strikes or other labor disputes, acts or omissions of Lessee or any other cause beyond Lessor's control.

6



14. **INSURANCE**

a.   Lessee will procure and maintain in full force and effect during the term of each Lease and shall pay all premiums for, policies of insurance of the type and in the minimum amounts stated below and with companies acceptable to Lessor and under terms reasonably satisfactory to Lessor:

    i.   Comprehensive Airline Liability Insurance including aircraft comprehensive ground, on premises auto, contractual, and cargo liability with an aggregate limit of not less than the Liability Limit stated in the Lease, naming Indemnified Parties (as defined in Section 11.a. herein) as additional insureds.

    ii.   Aircraft Hull Insurance covering all risks of loss or damage, while on the ground or in flight, to the Engine in a minimum amount not less than the Agreed Value stated in the Lease for such Engine. Such policy will include Lessor as loss payee as its interest may appear. The Agreed Value of the Engine will be in addition to the insured value of any aircraft to which it is attached.

    iii.   Aircraft Hull War Risk, Hijack and Confiscation Insurance covering the Engine in a minimum amount not less than the Agreed Value stated in the Lease for such Engine. Such policy will include Lessor as loss payee as its interests may appear.

    iv.   All Risk Spares Insurance, including in transit coverage, on the Equipment covering any damage which may occur while in Lessee's care, custody, and control but not then attached to an aircraft in a minimum amount not less than the Agreed Value stated in the Lease for such Equipment. Such policy will include Lessor as loss payee as its interests may appear.

b.   Liability policies will include the following special provisions:

    i.   Contractual liability specifically covering obligations assumed by Lessee in Section 11 above.

    ii.   War Risk exclusion write-back.

    iii.   Breach of Warranty provision as respects the Lessor.

    iv.   Primary Insurance clause.

    v.   30-day written notice of cancellation or material change (based on the date of delivery of the notice to Lessor).

    vi.   Severability of Interest clause.

    vii.   Premium setoff/counterclaim clause.

c.   Hull, Hull War Risk, and Spares policies will include the following special provisions:

    i.   Waiver of Subrogation.

    ii.   Breach of Warranty provision as respects the Lessor.

    iii.   30-day written notice of cancellation or material change except for 7 days for War Risk coverage (based on the date of delivery of the notice to Lessor).

    iv.   All losses will be adjusted with Lessor and Lessee.

    v.   Aircraft Hull and War Risk policies shall contain the "50/50" clause.



      vi.       Premium setoff/counterclaim clause.

   d.      Lessee will provide Lessor with certificates of insurance from insurers (and reinsurers, if applicable) satisfactory to Lessor evidencing the above coverages. The certificates will identify the Lease by date and the Engine by make, model, and serial number. Lessee will also direct its insurance broker to certify that an aircraft hull upon which the Engine is mounted is insured in an amount to include the agreed value of the Engine.

   e.      Lessee's above-described insurance obligations may be satisfied by a sublessee (if said sublessee has been approved by Lessor in accordance with Section 17 herein).

## 15.   TITLE TO EQUIPMENT

Title to Equipment will remain vested in Lessor (or the Owner, if Lessor is not the owner of the Equipment) at all times. Lessee will not permit any lien, claim, mortgage, or encumbrance ("Liens") except those Liens arising by or through Lessor (or Owner) to attach to any Equipment. Lessee will indemnify Lessor and Owner for any damages suffered by Lessor or Owner, including costs and expenses incident thereto, occurring as a result of any such Liens. Lessee's rights will be solely those of a lessee and nothing contained herein is intended or will be interpreted as granting to Lessee any other right, title, or interest in or to any Equipment, whether legal or equitable. Lessor will affix a placard to each Engine and Lessee will assure the placard remains attached to the Engine during the Lease Term, such placard to read as follows:

"THIS ENGINE IS OWNED BY AAR AIRCRAFT & ENGINE GROUP, INC., 1100 N. WOOD DALE ROAD, WOOD DALE, ILLINOIS 60191, (630) 227-2000." or alternate language if Lessor is not the owner of the Engine.

## 16.   TAXES

The charges set forth herein and in each Lease, including the Daily Rent, Transaction Fee, and Use Fee, do not include the amount of any duties, charges, imposts, or sale, use, excise, transfer, gross receipts, or any other taxes or charges which may be imposed by any governmental jurisdiction in connection with the lease of any Equipment. Lessee will indemnify, defend, and hold Lessor harmless from and against any and all taxes of whatsoever kind or nature, including costs or expenses incurred in connection therewith, except taxes based on the net income of Lessor, which may be assessed against, chargeable to, or collectible from either Lessee or Lessor by any taxing authority, foreign, federal, state, or local, and which are based upon, levied, or assessed with respect to the lease of any Equipment or the operation, possession, or use of such Equipment while under any Lease. Upon demand of any governmental authority for payment of any such tax or charge, Lessor will immediately notify Lessee and Lessee will pay the same; provided, however, that in the event that Lessor is required to pay the same, Lessor will invoice Lessee for the amount of such tax or charge paid by it and Lessee will immediately reimburse Lessor for such amount. Lessee may contest payment of any such tax or charge or may request Lessor to pay the same under protest on Lessee's behalf.

## 17.   SUBLEASES; ASSIGNMENT

   a.      Lessor shall have the right to novate or assign any Lease, and Lessee shall execute such reasonable documents as are necessary to effectuate such novation or assignment. Further, Lessee shall cause its Lease-related insurance certificates to be promptly revised to appropriately name novatees, assignees, lenders, or other parties having an interest in the Lease as additional insureds and/or loss payees, as such parties have been made known to Lessee by Lessor.

   b.      Lessee will not assign this GTA or any Lease in whole or in part, sublease any Equipment or otherwise relinquish possession thereof to anyone other than Lessor for any purpose except with the prior written consent of Lessor; and any such attempted assignment or sublease will be null and void. If a sublease is authorized by Lessor, (i) the sublease shall be subject and subordinate in all respects to the terms of the Lease, and (ii) Lessee shall at all times remain liable for the performance of its obligations under the Lease.

8



18. **RETURN OF EQUIPMENT**

a. Lessee will perform or cause to be performed on each Engine immediately prior to its return to Lessor, a full (compressor and turbine section) borescope inspection and a full test cell run as described below:

| Manufacturer | Engine Model | Test Number | Manual Reference |
|---|---|---|---|
| Pratt & Whitney | JT8D | 06 | Engine Manual |
| | JT9D | 20 | Engine Manual |
| | PW4000 | 09 | Engine Manual |
| IAE Intl. Aero Engines | V2500 | Functional Test No. 12 | Task 71-00 00-700-012-B00 of the V2500 Engine Manual |
| Rolls Royce | RB211-535E4 | Full Performance | RB211-535E4 Engine Shop Manual |
| General Electric | CF6-6,50 | 007 | Task Numbered Shop Manual |
| | CF6-80 | 003, 004, 006, and 007 | Task Numbered Shop Manual |
| CFMI | CFM56 | Engine acceptance test | CFM56 Engine Shop Manual (applicable to the specific engine type) |

or comparable tests that are specified by other engine manufacturers for their engines. The borescope inspection and test cell run shall be performed by a repair facility acceptable to Lessor; and Lessee shall obtain Lessor's prior written approval for said repair facility. Lessee will provide Lessor with at least 3 business days advance written notice of such Engine inspection and test, so that Lessor may have the opportunity to witness same. If the borescope inspection or test cell run identifies an Engine defect, Lessee will immediately notify Lessor of the findings. If during the Lease Term for any Engine, such Engine has not been installed on an aircraft, has not suffered any damage, and has not been involved in an accident, performance of a borescope inspection and test cell run will not be required.

Notwithstanding the foregoing, Lessee is not required to subject the Engine to a full test cell run prior to Redelivery of the Engine to Lessor if the Engine were last removed from service by Lessee due to Normal Wear and Tear or due to a Mandatory Change (however, a borescope inspection and borescope report are still required).

b. Upon expiration of the Lease Term or other valid termination of a Lease, Lessee will return the leased Equipment to the redelivery location described in the applicable Lease.

c. In addition to any other requirements of this GTA, upon return of the Equipment to Lessor, the Engine will be accompanied by the following documentation:

i. Either an FAA 8130-3 Form, or a JAA Form 1 with FAA dual release statement;

ii. An FAA Form 337 (if applicable, based on repairs that may have been performed on the Engine during the Lease);

iii. A signed Non-Incident Statement, in the form of Exhibit C, from each party that operated the Engine during the Lease Term; and

iv. An "Engine Condition Checklist" (form provided by Lessor) detailing the performance of the Engine redelivery inspection; provided, however, this checklist shall not be required if Lessor did not provide a similar checklist to Lessee at commencement of the Lease Term.

9



d.  Prior to returning the Equipment to Lessor, Lessee will prepare each Engine for shipment by (i) capping and plugging all openings of the Engine; (ii) preserving the Engine for storage for more than ninety (90) days (that is, Pratt & Whitney "Level 4", General Electric Subtask 72-00-00-620-053 for an "operable engine", or comparable preservation specifications by other engine manufacturers); (iii) completely covering the Engine with a tarpaulin; and (iv) otherwise preparing the Engine for shipment in accordance with the manufacturer's specifications/recommendations.  Any trucks used for shipment of the Engine will be equipped with air ride or air cushion trailers.  On any given shipment, such truck will be dedicated to Engines belonging solely to Lessor; except that additional items may be transported on the truck, provided that (a) the Engine may be off-loaded at the redelivery location without disturbing any of the additional items and (b) Lessor will not handle or reposition any of the additional items on the truck.

e.  If the Engine is a JT9D that has been operated during the Lease Term and is subject to the requirements of AD #94-26-06 or AD #93-19-02 R1 (Diffuser Case Rear Rail Inspection) as amended, Lessee will return such Engine with at least fifty (50) cycles remaining until the next Diffuser Case Rear Rail Inspection.

f.  Notwithstanding anything to the contrary in the GTA, if Engine parts shortages ("Missing Parts") are identified at redelivery of the Engine to Lessor and Lessee does not cause the Missing Parts to be replaced within five (5) business days after Lessor notifies Lessee of the Missing Parts, Lessor may, at its option, replace the Missing Parts at Lessee's sole expense. Lessee shall pay Lessor for Lessor's cost to replace the Missing Parts immediately upon receipt of Lessor's invoice for same.

19.  TERMINATION AND ADDITIONAL ASSURANCES

a.  Any of the following events shall constitute an event of default under a Lease ("Event of Default"):

i.  Lessee shall fail to make any payment of Daily Rent, Use Fees or other payments due under a Lease; or

ii.  Lessee shall fail to observe or perform any of the covenants or agreements of Lessee set forth in Sections 14, 17.b or 18 hereof; or

iii.  Lessee shall fail to perform or observe any other covenant, condition, or agreement to be performed or observed by it under a Lease, or in any agreement or certificate furnished to Lessor in connection herewith, and such failure shall continue unremedied for five (5) days after written notice to Lessee by Lessor specifying such failure and demanding the same to be remedied; or

iv.  A default by Lessee or its affiliates or subsidiaries under any aircraft lease, engine lease or any other lease between Lessor and Lessee (or its affiliates or subsidiaries).

If an Event of Default has occurred, Lessor may repossess the Equipment with or without terminating the Lease, or terminate this GTA and all Leases immediately upon written notice and take such other action as may be permitted by this GTA or applicable law.  The right of each party to require strict performance of any obligations hereunder will not be affected in any way by any previous waiver, forbearance, or course of dealing.

b.  If Lessee becomes insolvent; if Lessor has evidence that Lessee is not paying its bills when due without just cause; if a receiver of Lessee's assets is appointed; if Lessee takes any step leading to its cessation as a going concern; if Lessee either ceases or suspends operations for reasons other than a strike; then Lessee will forthwith give adequate assurance of the future performance of this GTA and all Leases by establishing an irrevocable letter of credit — issued by a bank and on terms

and conditions acceptable to Lessor, and in an amount sufficient to cover all amounts potentially due from Lessee under this GTA and all Leases -- that may be drawn upon by Lessor if Lessee does not fulfil its obligations under this GTA and all Leases in a timely manner. If Lessee does not provide the letter of credit or such other security reasonably acceptable to Lessor within twenty-four (24) hours of the happening of any such event, this GTA and all Leases hereunder will be terminated as of the happening of such event.

20.   <u>REPOSSESSION OF EQUIPMENT</u>

a.   In the event of any failure of Lessee to redeliver any leased Equipment to Lessor at the time required under Section 2 hereof, or in exercise of Lessor's right to repossess the Equipment under Section 19.a. above, Lessor may, without notice to Lessee, in addition to the exercise of any remedies available under law, enter upon the premises where such Equipment is located and take immediate possession of and remove such Equipment, without liability to Lessee for or by reason of such entry or taking possession, whether for the restoration of damage to property caused by such taking or otherwise, and Lessee consents to such action.

b.   To the extent permitted by law, Lessee hereby agrees that, in the event an order for relief is entered against it in a proceeding under Title 11 of the United States Code or any superseding statutes, Section 1110 of Title 11 of the United States Code, as amended from time to time, shall be applicable and Lessor will have the right to take possession of the Equipment in compliance with the provisions of this GTA and Section 1110. Lessee further agrees that neither it nor any successor will take a contrary position in any bankruptcy proceedings, nor will it take any action to interfere with Lessor's rights under such Section.



21. **NOTICES**

All notices or requests given in connection with this GTA or any Lease will be given in writing and sent prepaid by certified mail return receipt requested, telegram, teletype, telex, cable, or facsimile transmission to the addresses listed below unless either party notifies the other party of a different address.

For Lessor:   AAR Aircraft & Engine Group, Inc.
One AAR Place
1100 N. Wood Dale Road
Wood Dale, Illinois 60191
Attn:   Vice President, Contract Administration
Fax:   630-227-2338

For Lessee:   Evergreen International Airlines, Inc.
3850 Three Mile Road
McMinnville, Oregon 97128-9496
Attn:   Sr. Vice President Maintenance, Material & Engineering
Fax:   503-434-5913

22. **RECORDING**

Lessor intends to record all Leases with the Department of Transportation, Federal Aviation Administration, FAA Engine Registry, Oklahoma City, Oklahoma; and, if Lessee is located outside of the United States, Lessor may record certain Leases with the appropriate government agency of the country in which Lessee is located.   If Lessor decides to record a Lease with a government agency at Lessee's location, Lessee will execute such documents as may be reasonably requested by Lessor and will otherwise cooperate with Lessor in the recordation process.   Upon the termination of this GTA or any Lease for any reason whatsoever, each of the parties will execute and deliver to the other party promptly such documents as the other party may reasonably request in order to file a termination of this GTA or any Lease with the FAA or other applicable government agencies.

23. **BROKERS/FINDERS**

Lessee and Lessor each indemnifies the other party from liability for fees, commissions or other claims made upon the other by third party brokers or finders when such claims were caused by the indemnifying party.

24. **APPLICABLE LAW**

This GTA and all Leases will be deemed to have been entered into and performed in the State of New York and will be construed in accordance with the laws of New York.

25. **JURISDICTION AND VENUE**

The parties agree that any state or federal court located in the State of New York shall have jurisdiction to hear any suit, action, or proceeding arising out of or in connection with this GTA or any Lease.   Each party hereby acknowledges and irrevocably consents and submits to the jurisdiction of any such court in any such suit, action, or proceeding.   Service of process may be made against a party either in person, wherever such party may be found, or by notice as permitted herein to the address of the party set forth in this GTA.

26. **CONFIDENTIALITY**

The GTA and any Leases hereunder and all information contained in this GTA and any Leases hereunder are confidential and proprietary to Lessor and are solely for the internal use of the parties hereto.   Disclosure to third parties is prohibited, except as otherwise stated in this GTA or any Leases, as required by law or order of a governmental authority, or as required to enforce the terms of the GTA and any Leases hereunder.



27.   **FINANCIAL INFORMATION**

Lessee agrees to furnish Lessor, within one hundred twenty (120) days after the last day of each fiscal year of Lessee, a copy of the consolidated balance sheet of Lessee and its consolidated subsidiaries as of the end of such fiscal year, and related consolidated statements of income and retained earnings of Lessee and its consolidated subsidiaries for such fiscal year, certified by an independent certified public accounting firm of recognized standing, each on a comparative basis with corresponding statements for the prior fiscal year, and, if applicable, a copy of Lessee's annual report and form 10-K filed with the Securities and Exchange Commission for such fiscal year or such equivalent form as may be required by the government of the country in which Lessee is incorporated or otherwise organized. All reports shall be submitted to Lessor in accordance with Section 21 herein (Notices).

28.   **MISCELLANEOUS**

a.   This GTA and each Lease entered into hereunder contain the entire understanding of the parties with respect to such Lease and no warranties, representations or undertakings have been made by either party except as expressly set forth in this GTA and the respective Lease(s) entered into hereunder. Any previous or contemporaneous oral or written communications, representations, agreements or understandings between Lessor and Lessee relating to this GTA and any Lease thereunder are no longer of any force and effect and are superseded and replaced in their entirety by the provisions of the GTA and the applicable Lease.

b.   This GTA has been negotiated between the parties, each party having had the benefit of legal counsel. The construction or interpretation of any clause or provision of this GTA or any Lease will not be construed or resolved against Lessor solely because Lessor drafted any such clause or provision or otherwise prepared or caused the GTA or Lease documents to be drafted.

c.   This GTA and any Lease may not be amended in whole or in part orally, but only by an express instrument in writing signed by the parties hereto.

d.   This GTA will be binding upon and inure to the benefit of the respective permitted successors and assigns of the parties.

e.   This GTA and any Lease hereunder may be executed in counterparts. Such counterpart documents, when taken together, will constitute one and the same instrument. A facsimile signature on any counterpart will be deemed an original for all purposes.

f.   The terms contained in this GTA and any Lease that, by their nature, continue after termination or expiration thereof or redelivery of the Equipment to Lessor will survive such termination, expiration, or redelivery and continue in full force and effect.

g.   The remedies afforded a nonbreaching party are cumulative and in addition to all other rights in law, equity or otherwise.

h.   The prevailing party in any litigation to enforce the terms of this GTA shall be entitled to recover its reasonable and actual attorney's fees from the losing party.

* * *

13

General Terms Engine Lease Agreement
Contract No. 25454

IN WITNESS WHEREOF, the parties have executed this General Terms Engine Lease Agreement the day and year first above written.

AAR Aircraft & Engine Sales & Leasing, Inc.

By _____
Name: TIMOTHY J. ROMENESKO
Title: VICE PRESIDENT

Evergreen International Airlines, Inc.

By _____
Name: ROBERT P WELCH
Title: SR VP MAINTENANCE

*COUNTERPART NO. 1 OF 2 SERIALLY NUMBERED MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT IF ANY THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE, NO SECURITY INTEREST IN THIS DOCUMENT MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.*

14



EXHIBIT A to General Terms Engine Lease Agreement

# AIRCRAFT ENGINE LEASE AGREEMENT

## CONTRACT NUMBER ____

THIS AIRCRAFT ENGINE LEASE AGREEMENT ("Lease") is made and entered into as of _____, 200_, by and between:

## AAR AIRCRAFT & ENGINE SALES & LEASING, INC. ("Lessor")
### and
## EVERGREEN INTERNATIONAL AIRLINES, INC. ("Lessee")

I.   AGREEMENT TO LEASE:  Lessor hereby leases to Lessee and Lessee hereby leases from Lessor the Equipment described in ARTICLE IV herein, subject to the terms and provisions of this Lease.  This Lease is entered into pursuant to the General Terms Engine Lease Agreement dated _____, 200_, (the "GTA") between Lessor and Lessee which is hereby incorporated herein by reference.  Capitalized terms used herein but not defined shall have the same meaning as in the GTA.  In the event of any conflict in terms between the GTA and this Lease, the terms of this Lease shall prevail.

II.   LEASE TERM:  The term of this Lease will be for a period of _____ days, commencing on the date the Engine is delivered to Lessee at the Delivery Location (the "Delivery Date").

III.   DELIVERY/REDELIVERY LOCATIONS:    The  Engine  will  be  delivered  to  Lessee  F.O.B. _____ (the "Delivery Location"); and upon termination of the Lease, the Engine will be redelivered to Lessor by Lessee F.O.B. _____ (the "Redelivery Location").

IV.   TYPE OF EQUIPMENT (which has 750 or more rated takeoff horsepower):

| Make | Model | Configuration | Engine Serial No. | Total Time Since New | Total Cycles Since New |
|------|-------|---------------|-------------------|----------------------|------------------------|
|      |       |               |                   |                      |                        |

V.   LOANED ENGINE STAND:  Serial Number _____

VI.   INSPECTION PERIOD: __ hours after the Delivery Date.

VII.   ADDITIONAL TERMS AND CONDITIONS:  See Schedule 1 attached hereto.

IN WITNESS WHEREOF, the parties have executed this Lease on the date first above written.

AAR AIRCRAFT & ENGINE SALES & LEASING, INC.          EVERGREEN INTERNATIONAL AIRLINES, INC.

By: _____          By: _____
   Name:                                      Name:
   Title:                                     Title:



## SCHEDULE 1 TO
## AIRCRAFT ENGINE LEASE AGREEMENT – CONTRACT NO. _____

The following additional terms and conditions apply to the Aircraft Engine Lease Agreement – Contract No. _____ for ESN _____:

A.    **LEASE CHARGES:**

Transaction Fee:    $_____
Daily Rent:    $_____/day
Use Fee:    $_____/hour or cycle
Security Deposit:    $_____

Initial Payment:    $_____

B.    **AGREED VALUE:**    $_____

C.    **LIABILITY LIMIT:**    $_____ per occurrence


AAR AIRCRAFT & ENGINE SALES & LEASING, INC.    EVERGREEN INTERNATIONAL AIRLINES, INC.

By _____    By _____
Name:    Name:
Title:    Title:



EXHIBIT B to General Terms
Engine Lease Agreement

## ENGINE DELIVERY RECEIPT

FROM:          Evergreen International Airlines, Inc.

TO:            AAR Aircraft & Engine Sales & Leasing, Inc.

The undersigned hereby acknowledges that on this _____ day of _____, 200____, AAR Aircraft & Engine Group, Inc. ("AAR") did deliver to Evergreen International Airlines, Inc. that certain _____ Engine Manufacturer's Serial No. _____ and Engine Stand with Serial No. _____ at _____. The undersigned does hereby further acknowledge that he/she has received and does hereby accept delivery of the aforesaid Engine and Engine Stand.

Signed this ___ day of _____, 200_, at _____.

By:_____
   Name:
   Title:



Exhibit C to General Terms
Engine Lease Agreement

## NON-INCIDENT STATEMENT

During the term of the Aircraft Engine Lease Agreement – Contract No. _____ *[During the period from _____ to _____ ]*, the engine described below (the "Engine") (a) was not involved in an incident or accident; that is, the Engine was not involved in an event which resulted in the Engine being deemed by the manufacturer as unacceptable for continued aircraft usage, and (b) was never subjected to military or government operation.

<u>ENGINE TYPE</u>         <u>ENGINE SERIAL NO.</u>

‾‾‾‾‾‾         ‾‾‾‾‾‾

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ [Operator]

By ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Name:
Title:



## FIRST AMENDMENT TO
## GENERAL TERMS ENGINE LEASE AGREEMENT

### CONTRACT NO. 25454-1

**THIS FIRST AMENDMENT TO GENERAL TERMS ENGINE LEASE AGREEMENT** is made as of June 3, 2005, effective as of November 13, 2004, by and between **AAR AIRCRAFT & ENGINE SALES & LEASING, INC.** ("Lessor") and **EVERGREEN INTERNATIONAL AIRLINES, INC.** ("Lessee").

WHEREAS, Lessor and Lessee are parties to a General Terms Engine Lease Agreement dated as of November 14, 2001 ("GTA") which GTA establishes terms and conditions applicable to engines leased to Lessee by Lessor; and

WHEREAS, the GTA expired on November 13, 2004; and

WHEREAS, Lessee and Lessor wish to extend the GTA.

NOW, THEREFORE, the parties hereto agree to amend the GTA as follows:

1.      Capitalized terms used herein and not defined shall have the same meaning as in the Agreement.

2.      The term of the GTA is hereby extended through June 2, 2008.

3.      Except as provided above, the GTA remains unchanged.

**IN WITNESS WHEREOF**, the parties have executed and delivered this First Amendment to General Terms Engine Lease Agreement as of the date first written above.

**AAR AIRCRAFT & ENGINE**
**AIRLINES, INC.**
**SALES & LEASING, INC.**

By _____
Name: JAMES M. VINCENT
Title: V. P.

**EVERGREEN INTERNATIONAL**

By _____
Name: Eric Moorman
Title: VP Powerplants

## SECOND AMENDMENT TO
## GENERAL TERMS ENGINE LEASE AGREEMENT

### CONTRACT NO. 25454-2

**THIS SECOND AMENDMENT TO GENERAL TERMS ENGINE LEASE AGREEMENT** is made as of August 13, 2008, effective as of June 2, 2008, by and between **AAR AIRCRAFT & ENGINE SALES & LEASING, INC.** ("Lessor") and **EVERGREEN INTERNATIONAL AIRLINES, INC.** ("Lessee").

WHEREAS, Lessor and Lessee are parties to a General Terms Engine Lease Agreement dated as of November 14, 2001, as amended ("GTA") which GTA establishes terms and conditions applicable to engines leased to Lessee by Lessor; and

WHEREAS, the GTA expired on June 2, 2008; and

WHEREAS, Lessee and Lessor wish to extend the GTA.

NOW, THEREFORE, the parties hereto agree to amend the GTA as follows:

1.   Capitalized terms used herein and not defined shall have the same meaning as in the Agreement.

2.   The term of the GTA is hereby extended through June 2, 2011.

3.   Section 4.a.iv. of the GTA is amended to read as follows:

the Security Deposit specified in each Lease.

(a)   The Security Deposit shall be held by Lessor as security for the due and punctual payment by Lessee of all amounts payable by it, and the due and punctual performance by Lessee of all of its obligations, hereunder and under any other agreement between Lessor and Lessee. The Security Deposit is not to be used by Lessee in lieu of any payment obligations under the Lease. Lessee hereby assigns, transfers and pledges to Lessor, and hereby grants to Lessor, a first-priority security interest in, the Security Deposit to secure such payment and performance. No interest shall be paid on the Security Deposit. If an Event of Default (as hereinafter defined) shall occur and be continuing, then in addition to any other rights Lessor may have under applicable law as a secured party or otherwise, or under this GTA or any other agreement, Lessor may set off against, use, apply or retain all or any portion of the Security Deposit in full or partial payment for amounts payable by Lessee under this GTA or any other agreement or for amounts necessary to compensate Lessor for its expenses arising in connection with such Event of Default. In such event, Lessee shall replenish the Security Deposit immediately upon written notice from Lessor.



**THIRD AMENDMENT TO**
**GENERAL TERMS ENGINE LEASE AGREEMENT**
CONTRACT NO. 25454-3

THIS THIRD AMENDMENT TO GENERAL TERMS ENGINE LEASE AGREEMENT is made as of May 27, 2011, by and between AAR AIRCRAFT & ENGINE SALES & LEASING, INC. ("Lessor") and EVERGREEN INTERNATIONAL AIRLINES, INC. ("Lessee").

WHEREAS, Lessor and Lessee are parties to a General Terms Engine Lease Agreement dated as of November 14, 2001, as amended ("GTA") which GTA establishes terms and conditions applicable to engines leased to Lessee by Lessor; and

WHEREAS, the GTA expires on June 2, 2011; and

WHEREAS, Lessee and Lessor wish to extend the GTA.

NOW, THEREFORE, the parties hereto agree to amend the GTA as follows:

1.    Capitalized terms used herein and not defined shall have the same meaning as in the Agreement.

2.    The term of the GTA is hereby extended through June 2, 2014.

3.    Section 4.c. of the GTA is amended to read as follows:

*All payments will be made by bank transfer of immediately available funds in U.S. Dollars to the account of Lessor at:*



*Bank Name:*
*Address:*
*Account Name:*
*Account Number:*
*ABA (Fed Wires):*
*Swift Code (if Intl):*
*Bank Official / Phone:*

4.    Except as provided above, the GTA remains unchanged.

IN WITNESS WHEREOF, the parties have executed and delivered this Third Amendment to General Terms Engine Lease Agreement as of the date first written above.

AAR AIRCRAFT & ENGINE SALES &
LEASING, INC.

By _____
Name: _____
Title: **JAMES N. VINCENT**
      **VICE PRESIDENT**

EVERGREEN INTERNATIONAL
AIRLINES, INC.

By _____
Name: Eric Moorman
Title: VP Powerplants